UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DUSTIN INGRAM, FELISHA INGRAM, and L.I., Z.I., and D.I., minors by and through their Guardian ad Litem, Seth Downham,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>KATIE MOUSER, ADA COUNTY SHERIFF'S DEPARTMENT, JESSICA JOHNSON, ST. LUKE'S CHILDREN'S HOSPITAL, AMY L. BARTON, M.D., DAVE JEPPESEN, LORI WOLFF, MIREN UNSWORTH, and DOES 1-50,<br><br>　　　　Defendants. | Case No. 1:19-cv-00308-DCN<br><br>**MEMORANDUM AND ORDER ON DEFENDANTS ST. LUKE'S CHILDREN'S HOSPITAL AND AMY L. BARTON, M.D'S MOTION TO DISMISS (DKT. 46) AND DEFENDANTS DAVE JEPPESEN, KATIE MOUSER, MIREN UNSWORTH, LORI WOLFF'S MOTION TO DISMISS (DKT. 48)** |

## I.   INTRODUCTION

Pending before the Court are Defendants St. Luke's Children's Hospital ("St. Luke's") and Amy L. Barton, M.D.'s Motion to Dismiss (Dkt. 46) and Defendants Dave Jeppesen, Katie Mouser, Miren Unsworth, Lori Wolff's ("IDHW officials") Motion to Dismiss (Dkt. 48). Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented.[1] Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly

---

[1] Additionally, all parties concerned have informally notified the Court of their agreement that the pending Motions to Dismiss can be decided without oral argument.

aided by oral argument, the Court will decide the motions without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). For the reasons explained below, the Court grants Defendants St. Luke's and Dr. Barton's motion to dismiss and grants the IDHW officials' motion to dismiss.

## II.    BACKGROUND[2]

In August 2017, the Ingram family was living in an RV when the Department of Health and Welfare, Family and Children's Services ("FCS") received a report of physical child abuse. One of the Ingram children had a black eye, and there were often "yelling, cussing and crashing" sounds in the Ingram family's home. Dkt. 35, ¶ 16. An FCS social worker visited the family's home on August 11, 2017, and observed a minor injury on one of the children's hands. *Id.* ¶ 17. Five days later, social worker Katie Mouser and detective Jessica Johnson visited the home and reported it was "cluttered and dirty" and that two of the children were "dirty." *Id*. ¶ 18. However, according to Plaintiffs' First Amended Complaint ("FAC"), "[n]either Mouser or Johnson found any signs of abuse or that the children were in imminent danger of serious bodily injury." *Id*.

During their visit, Mouser and Johnson removed the three Ingram children (hereinafter "minor Plaintiffs") from the parents' custody without a warrant or parental consent. *Id*. ¶ 20. The state officials then took the children to St. Luke's Children At Risk Evaluation Services ("CARES") Unit for examination. *Id.* ¶ 21. There, Dr. Barton conducted complete physical examinations on each of the children, including examination

---

[2] The following facts are construed in the light most favorable to Plaintiffs, the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

of their genitals. *Id*.

The Ingram parents and minor children initially brought this action against social worker Mouser, the Ada County Sheriff's Department ("ACSD"), detective Johnson, St. Luke's, Dr. Barton, the State of Idaho, the Idaho Department of Health and Welfare, as well as unknown Does 1 through 50, alleging violations of their civil rights under 42 U.S.C. § 1983 with underlying First, Fourth, and Fourteenth Amendment violations. Dkt. 1.

On December 30, 2019, Plaintiffs filed the First Amended Complaint ("FAC"). Dkt. 35. The FAC dropped the State of Idaho and the Idaho Department of Health and Welfare as Defendants and added Dave Jeppesen, Lori Wolff, and Miren Unsworth as Defendants in place of three Does. It also added 42 U.S.C. § 1985 and *Monell*-related claims against St. Luke's. *Id*.; *see Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658 (1978) (hereinafter "*Monell*").

On January 13, 2020, Defendants St. Luke's and Dr. Barton filed their motion to dismiss. Dkt. 46. On January 17, 2020, the IDHW officials filed their motion to dismiss. Dkt. 48. The motions are now ripe.

### III.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a claim if the plaintiff has "fail[ed] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) dismissal may be based on either a "'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (citation omitted). Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short

and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007). A complaint "does not need detailed factual allegations," but it must set forth "more than labels and conclusions, and a formulaic recitation of the elements." *Id.* at 555. The complaint must also contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Id.* at 570.

In deciding whether to grant a motion to dismiss, the court must accept as true all well-pleaded factual allegations made in the pleading under attack. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A court is not, however, "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Dismissal without leave to amend is inappropriate unless it is beyond doubt that the complaint could not be saved by amendment. *See Harris v. Amgen, Inc.,* 573 F.3d 728, 737 (9th Cir. 2009).

## IV.   DISCUSSION

Plaintiffs assert five claims against multiple defendants in their complaint. Only Plaintiffs' Third, Fourth, and Fifth Claims are at issue here. Plaintiffs' title their Third Claim: "THIRD CLAIM FOR RELIEF Violation of Civil Rights Under 42 U.S.C. § 1983 -- By All Plaintiffs Against Defendants MOUSER, JOHNSON, BARTON, ST. LUKE'S, and Defendants Does 11-20)" (Dkt. 35, at 9); their Fourth Claim: "FOURTH CLAIM FOR RELIEF MONELL RELATED CLAIMS By Plaintiffs Against ACSD, ST. LUKE'S and DOES 24 through 50" (*Id.* at 11); and their Fifth Claim: "INJUNCTIVE RELIEF Against ACSD, ST. LUKE'S, JEPPESEN, WOLFF, UNSWORTH, and DOES 24 through 50 - By

All Plaintiffs" (*Id*. at 15). In so titling their claims, Plaintiffs make clear that their Third Claim against St. Luke's, a private entity, is *not* related to a *Monell* claim.

Defendant St. Luke's moves to dismiss Plaintiffs' Third, Fourth, and Fifth Claims against it. Defendant Dr. Barton moves to dismiss Plaintiffs' Third Claim against her. Defendants IDHW officials move to dismiss Plaintiffs' Fifth Claim against them.

### A. 42 U.S.C. § 1983 Claims Against St. Luke's and Dr. Barton

In general, "[t]o establish § 1983 liability, a plaintiff must show both: (1) deprivation of a right secured by the Constitution and laws of the United States; and (2) that the deprivation was committed by a person acting under color of state law." *Chudacoff v. Univ. Med. Ctr. of S. Nev.*, 649 F.3d 1143, 1149 (9th Cir. 2011) (citing *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003)).

To bring a § 1983 claim against a municipality—or a private entity performing a government function—a plaintiff must allege: (1) the plaintiff was deprived of a constitutional right; (2) the municipality or entity had a policy or custom; (3) the policy or custom amounted to deliberate indifference to plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *Mabe v. San Bernardino Cnty.*, 237 F.3d 1101, 1110–11 (9th Cir. 2001). Such a claim is considered a *Monell* claim. In a *Monell* claim, a municipality or private entity performing a state function "may be held liable under § 1983 when the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it." *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1250 (9th Cir. 2010), *overruled in part on other*

*grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc). A municipality may not, however, be sued under a *respondeat superior* theory. A plaintiff must therefore show "*deliberate* action attributable to the municipality [that] directly caused a deprivation of federal rights." *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397 (1997). "Where a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into *respondeat superior* liability." *Id.*

### 1. Deprivation of Fourth and Fourteenth Amendment Rights

To establish § 1983 liability against St. Luke's and Dr. Barton, Plaintiffs must show they were deprived of a right secured by the Constitution and laws of the United States.

### i. Deprivation of Constitutional Rights By St. Luke's

As previously stated, to bring a § 1983 claim against a municipality or a private entity performing a government function, a plaintiff must allege that the execution of an official policy or unofficial custom inflicted the injury of which the plaintiff complains, as required by *Monell,* 436 U.S. at 694. *See also Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012) (applying *Monell* to private entities performing a government function).

In Plaintiffs' Third Claim, they do not allege that St. Luke's, a private entity, had any policy or custom that violated their constitutional rights. Thus, they have not plausibly alleged a § 1983 claim against St. Luke's. Plaintiffs' Third Claim against St. Luke's is accordingly dismissed with prejudice.

In Plaintiffs' Fourth Claim, they allege that St. Luke's established and/or followed policies, procedures, customs and/or practices that caused Plaintiffs' Fourth and Fourteenth

MEMORANDUM AND ORDER - 6

constitutional rights to be violated. They contend that St. Luke's had a:

> a. ". . . policy of conducting medical procedures, including examinations, on children removed from their parents without exigent circumstances, court order or warrant, or parental consent; and without notice to or the presence of the children's parents, in violation of the Constitutional rights of children and their parents, as discussed in *Wallis v. Spencer*, 202 F.3d 1126 (9th Cir. 2000), *Greene v. Camreta*, 588 F.3d 1011 (9th Cir. 2009), and as confirmed in *Mann v. County of San Diego*, 907 F.3d 1154 (9th Cir. 2018).

> b. By acting with deliberate indifference *in implementing a policy of inadequate training, and/or by failing to train* its officers, agents and employees, in providing the Constitutional protections guaranteed to individuals, including those under the Fourth and Fourteenth Amendments, when performing actions related to child abuse and neglect, and dependency type proceedings.

> c. The policy of acting with deliberate indifference in failing to correct the wrongful conduct of its employees failing to provide the Constitutional protection guaranteed to individuals, including those under the Fourth and Fourteenth Amendments, when performing actions related to child abuse and neglect, dependency type proceedings.

> (The list is not exhaustive due to the pending nature of discovery and the privileged and protected records of investigative and juvenile records.)

Dkt. 35, ¶ 48 (emphasis added). In essence, Plaintiffs are alleging St. Luke's had a policy of failing to train their employees. St. Luke's argues Plaintiffs' pleading merely recites the element of a cause of action.

An unwritten policy or custom must be so "persistent and widespread" that it constitutes a "permanent and well settled" practice. *Monell*, 436 U.S. at 691 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–68 (1970)). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

MEMORANDUM AND ORDER - 7

A claim that a supervisor or training official failed to adequately train subordinates ordinarily requires that, "in light of the duties assigned to specific officers or employees[,] the need for more or different training [was] so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the [supervisor or training official] can reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citing *Oklahoma City v. Tuttle,* 471 U.S. 808, 822–23 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training'" is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell.*")).

In failure to train cases, a private entity's (when acting under the color of state law) "failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Connick*, 563 U.S. at 61 (quoting *City of Canton v. Harris*, 489 U.S. 378 (1989)). The deliberate indifference standard for municipalities is an objective standard. *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1076 (9th Cir. 2016). This standard is satisfied when "a § 1983 plaintiff can establish that the facts available to city policymakers put them on actual or constructive notice that the particular omission [or act] is substantially certain to result in the violation of the constitutional rights of their citizens." *Id.* (quoting *Canton*, 489 U.S. at 396). That is, to maintain a failure to train claim, a plaintiff must allege facts showing a "pattern of violations" that amounts to deliberate indifference of which St. Luke's decision makers had actual or constructive notice. *Connick v. Thompson*, 563 U.S. 51, 72 (2011).

Likewise, "a failure to supervise that is 'sufficiently inadequate' may amount to 'deliberate indifference'" that supports a policy-based claim against a municipality. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011).

A plaintiff cannot simply restate these standards of law in a complaint. Instead, a plaintiff must provide specific facts supporting the elements of each claim and must allege facts showing a causal link between each defendant and plaintiff's injury or damage. Alleging "the mere possibility of misconduct" is not enough. *Iqbal*, 556 U.S. at 679; *see also AE ex rel. Hernandez v. Cty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (stating that for a *Monell* claim the plaintiff "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively" (internal quotation marks and citation omitted)).

Here, Plaintiffs do not allege that St. Luke's has a specific written or official policy of providing services to children removed from their parents without a court order, warrant, or parental consent.[3] Rather, Plaintiffs generically allege that St. Luke's has inadequate training. They do not allege specific facts that show a pattern of violations of individuals' Fourth or Fourteenth Amendment rights. Nor do they allege that St. Luke's had actual or constructive notice that a particular training omission was substantially certain to result in

---

[3] In Plaintiffs' reply, they say that the "subject examinations were conducted pursuant to St. Luke's policies and longstanding practices in collaboration with the State and Ada County." Dkt. 52 at 1. Their complaint does not state that the policy at issue involved collaboration with the State and Ada County. Even if they had, they still do not allege specific facts regarding what St. Luke's policy actually entailed, if it was written or informal, who carried out what task, when the policy was implemented, etc. Simply put, there are no specific facts about what St. Luke's purported policy is.

a violation of their patients' constitutional rights.

Additionally, even if Plaintiffs had alleged specific facts that established children were routinely examined without a court order, warrant, or parental consent, such examinations are not substantially certain to result in the violation of constitutional rights. Doctors, when acting under color of state law, may examine children without a court order, warrant, or parental consent in exigent circumstances. "The determination of exigent circumstances is a mixed question of law and fact[.]" *United States v. Reilly*, 224 F.3d 986, 991 (9th Cir. 2000). Plaintiffs must allege specific facts showing that St. Luke's employees, when acting under the color of state law, had a pattern of conducting a medical investigation on children without exigent circumstances or other legal authority. *But see Iqbal*, 556 U.S. at 678 (a court is not required to accept as true a complaint's legal conclusions). In the absence of such allegations, the Court dismisses Plaintiffs' Fourth Claim against St. Luke's without prejudice.

ii.   <u>Deprivation of Constitutional Rights by Dr. Barton</u>

Plaintiffs allege in their Third Claim that Dr. Barton violated Plaintiffs' "constitutional liberty interests, including their right to familial association and their procedural due process rights under the Fourteenth Amendment," as well as the minor Plaintiffs' "Fourth Amendment rights against unreasonable searches and seizures." FAC ¶ 39. Dr. Barton argues that Plaintiffs have not plausibly pled any constitutional violation because the FAC makes clear that (1) Dr. Barton did not remove the minor Plaintiffs and (2) only conducted an examination after the government removed the children from their parents. Consequently, Dr. Barton argues she did not violate Plaintiffs' constitutional rights

because she did not participate in determining whether a court order or warrant was needed to remove Plaintiff children from their parents. The Court disagrees with Dr. Barton's premise—a medical examination itself may, under certain circumstances, amount to a constitutional violation.

The Fourth and Fourteenth Amendments protect the parent-child relationship from unwanted interference by the state. *Kirkpatrick v. Cty. of Washoe*, 843 F.3d 784, 788 (9th Cir. 2016). "The right to family association includes the right of parents to make important medical decisions for their children, and of children to have those decisions made by their parents rather than the state." *Wallis*, 202 F.3d at 1141 (citing *Parham v. J.R.*, 442 U.S. 584, 602 (1979) (holding that it is in the interest of both parents and children that parents have the ultimate authority to make medical decisions for their children unless a "neutral fact finder" determines, through a due process hearing, that parent is not acting in child's best interests); *Calabretta v. Floyd*, 189 F.3d 808 (9th Cir. 1999) (holding that "[t]he government's interest in the welfare of children embraces not only protecting children from physical abuse, but also protecting children's interest in the privacy and dignity of their homes and in the lawfully exercised authority of their parents.")). The Ninth Circuit has held that:

> Barring a reasonable concern that material physical evidence might dissipate, *see Schmerber v. State of Cal.,* 384 U.S. 757, 770 (1955), or that some urgent medical problem exists requiring immediate attention, the state is required to notify parents and to obtain judicial approval before children are subjected to investigatory physical examinations. Moreover, parents have a right arising from the liberty interest in family association to be with their children while they are receiving medical attention (or to be in a waiting room or other nearby area if there is a valid reason for excluding them while all or a part of

the medical procedure is being conducted). Likewise, children have a corresponding right to the love, comfort, and reassurance of their parents while they are undergoing medical procedures, including examinations [.]

*Wallis*, 202 F.3d at 1141–42.

Plaintiffs have plausibly alleged that their Fourth and Fourteenth Amendment rights were violated when Plaintiff children were medically examined without a warrant and without parental consent. However, for *Dr. Barton* to have violated their constitutional rights, Dr. Barton must have been acting under the color of law.

### 2. *Acting Under the Color of State Law*

Courts treat the "under color of law" requirement of Section 1983 cases as identical to the "state action" requirement of the Fourteenth Amendment. *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982). Generally, "[p]rivate hospitals, doctors, and nurses are not . . . considered state actors amenable to suit under § 1983." *Sliwinski v. Maysent*, No. 3:18-cv-2653-CAB, 2019 WL 581720, at *4 (S.D. Cal. Feb. 13, 2019) (citing *Briley v. California*, 564 F.2d 849, 855–56 (9th Cir. 1977)). Courts have not found that private hospitals are state actors merely because they are subject to state regulation. *See Chudacoff*, 649 F.3d at 1149 (stating the mere fact that a private hospital is "subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment") (internal quotation marks and citation omitted). Nor have courts found state action when a private, non-profit hospital's "state links consist merely of receipt of federal funds under the Hill-Burton, Medicaid, and Medicare programs, and exemption from state and federal taxes." *Id.* (citation omitted).

Courts have, however, found state action when: a state has delegated its obligation

MEMORANDUM AND ORDER - 12

to provide medical care to inmates to a private hospital or medical provider, *McKenzie v. Jorizzo*, No. 1:13-cv-1302-AA, 2015 WL 127826, at *4 (D. Or. Jan. 6, 2015) (collecting cases); when a private hospital or physician enters into a contract with the state to provide medical care to inmates, *McKinney v. Cty. of Imperial*, No. 18-7198, 2019 WL 384323, at *3 n.6 (C.D. Cal. Jan. 3, 2019); when a private party has contracted with the state to provide medical care to indigent citizens, *Sliwinski*, 2019 WL 581720, at *4 (citing *Lopez v. Dep't of Health Servs.*, 939 F.2d 881, 883 (9th Cir. 1991)); and when "a publicly financed hospital . . . leased its management and operation to a private corporation." *Chudacoff*, 649 F.3d at 1150 (citation omitted). In addition, "there is no dispute that the operation of [a public] hospital is state action." *Id.* (citation and internal quotation marks omitted).

Generally, courts have relied on four tests to determine whether someone is acting under the color of state law: (1) the public function test, (2) the joint action test, (3) the state compulsion test, and (4) the governmental nexus test. *Franklin v. Fox*, 312 F.3d 423, 444–45 (9th Cir. 2002). Here, Plaintiffs assert Dr. Barton acted under color of state law pursuant to the joint action test.

The joint action test asks "whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." *Franklin*, F.3d at 445 (internal quotation marks and citation omitted). Joint action between the state and a private entity requires willful participation in some conspiracy to deprive an individual of his constitutional rights. *Dennis v. Sparks*, 449 U.S. 24, 27–29 (1980). This requirement can be satisfied either "by proving the existence of a conspiracy or by showing that the private party was a willful participant in joint action with the State or its agents." *Tsao v. Desert*

*Palace, Inc.*, 698 F.3d 1128, 1140 (9th Cir. 2012) (internal quotation marks and citation omitted). In this context, a conspiracy requires "an agreement or meeting of the minds to violate constitutional rights." *Fonda v. Gray*, 707 F.2d 435, 438 (1983) (internal quotation marks and citations omitted). It is insufficient to show that a private entity merely acquiesced to a government agency's request. *Id.* Rather, joint action requires the plaintiff to show that the private entity shared the state's general conspiratorial objective. *Id.* Ultimately, joint action exists when the state has "so far insinuated itself into a position of interdependence with [the private entity] that it must be recognized as a joint participant in the challenged activity." *Gorenc v. Salt River Project Agric. Improvement & Power Dist.*, 869 F.2d 503, 507 (9th Cir. 1989) (internal quotation marks and citation omitted) (alteration in original).

In an unpublished opinion, the Ninth Circuit has also found it plausible that a private hospital and private medical group operated as state actors by assisting the state in a child abuse investigation. *N.L. v. Children's Hosp. Los Angeles*, 711 F. App'x 433 (9th Cir. 2018), *cert. denied sub nom. Children's Hosp. Los Angeles v. N.L.*, 139 S. Ct. 315 (2018) ("This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3"). In *N.L.*, a plaintiff brought a § 1983 against a private hospital and medical group. The plaintiff claimed defendants violated the plaintiff's constitutional rights by conducting an invasive forensic medical examination for signs of child abuse without judicial authorization and without the plaintiff's parents' knowledge or consent. The government agency removing the children phoned the hospital to schedule an appointment for the minor to have an investigatory forensic medical evaluation, which the

hospital preformed at the specific request and direction of the government. The Ninth Circuit held that plaintiff plausibly alleged that the defendants "in performing an intrusive forensic examination of N.L. . . . [were] not providing medical treatment but instead w[ere] exercising [their] discretion to collaborate with county government in the laudable endeavor of investigating child abuse, a potential crime." *Id*. at 434 (citing *West v. Atkins*, 487 U.S. 42, 54–55 (1988) (concluding that a private physician who assists the state in carrying out a governmental function is a state actor); *Dennis v. Sparks*, 449 U.S. 24, 27 (1980) (holding that a private defendant can act under color of state law if it is a "willful participant in joint action with the State or its agents")).

Here, Plaintiffs rely on *N.L.* to support their argument that Dr. Barton was a state actor. They argue Dr. Barton was a willful participant in a joint action with the State by virtue of being party to a contract with the State of Idaho and/or Ada County Sheriff's Department ("ACSD") to conduct forensic medical examinations of children removed from the care and custody of their parents.

Dr. Barton responds that *N.L. v. Children's Hospital Los Angeles* is a two-paragraph unpublished decision. She does not dispute that under *N.L.* a medical provider who "performs a government function such as an investigation . . . acts under the color of state law because it becomes a 'willful participant in joint action with the State or its agents.'" Dkt. 55, at 4 (quoting *N.L.*, 711 F. App'x at 434). Rather, she argues that Plaintiffs have not plausibly alleged that Dr. Barton was part of a "conspiracy" because the children were already removed from the home for suspected child abuse *prior* to the medical examination. As the medical evaluation was merely the last step before placing the children

in foster care, St. Luke's and Dr. Barton's medical examination was not part of the child abuse investigation. Further, St. Luke's and Dr. Barton argue that Plaintiffs did not allege the medical examination was an investigation; rather, Plaintiffs accuse all defendants of a "forensic sexual abuse investigation." (quoting Dkt. 35, ¶ 38).

The Court agrees with Dr. Barton that whether or not she was a state actor under the joint action test turns on whether the medical examination was part of the State's child abuse investigation.

In *Mann v. Cty. of San Diego*, the county separated children from their parents. The children were initially assessed for emergency medical needs and contagious diseases, which the Ninth Circuit found to "clearly serve[] to treat children's immediate needs and address potential dangers to other children at [the medical facility] . . . ." 907 F.3d 1154, 1166 (9th Cir. 2018), *cert. denied sub nom. Cty. of San Diego, California v. Mann*, 140 S. Ct. 143 (2019). At issue, however, was a second medical examination, where the children were "subjected to visual and tactile inspections of their external genitalia, hymen, and rectum, as well as potentially painful tuberculosis and blood tests. Children are forced to undress and are inspected, by strangers, in their most intimate, private areas." *Id.* at 1165 (internal citations omitted).

Acknowledging that disentangling the goal of protecting a child's welfare from general law enforcement purposes is particularly difficult, the *Mann* court rejected the county's attempt "to parse out a purely non-investigatory purpose" out of their second medical examination. It held that medical examinations are investigatory if "the physician is looking for signs of physical and sexual abuse." 907 F.3d at 1161. The *Mann* court noted

that "medical examinations of young children are particularly likely to have dual purposes since the 'investigation of [ ] abuse for child protection purposes may uncover evidence of a crime.'" *Id*. (quoting *Greene v. Camreta*, 588 F.3d 1011, 1026–27, 1029 (9th Cir. 2009), *vacated in part as moot*, 661 F.3d 1201 (9th Cir. 2011)) (alterations in original). It further held that the district court's analysis "should have stopped with its determination that the medical examinations had an investigatory purpose. A parent's due process right to notice and consent is not dependent on the particular procedures involved in the examination, or the environment in which the examinations occur, or whether the procedure is invasive, or whether the child demonstrably protests the examinations." *Id*. at 1162.

Dr. Barton argues that her alleged wrongful examination of the minor Plaintiffs is similar to the initial medical assessment in *Mann*, and not to the second medical examination which the Ninth Circuit found to be an investigatory search. She argues her examination was not an investigatory physical examination because it was an emergency and cursory medical examination to determine if there were any urgent medical needs prior to placing the children in foster care.

At this stage, the Court's analysis stops if it finds that the Plaintiffs have plausibly alleged the medical examinations had an investigatory purpose. In the FAC, Plaintiffs allege that Dr. Barton, "cause[d] and allow[ed] Plaintiff Minors to be subjected to unlawful medical procedures, including examinations, and specifically including invasive forensic sexual abuse investigations . . . ." Dkt. 35, ¶ 38. Additionally, Plaintiffs allege that the children had their "genitals" examined. Dkt. 35, ¶ 21. The Court finds the above language plausibly alleges that the medical examination part of an investigation. Like the *N.L.* court,

MEMORANDUM AND ORDER - 17

this Court acknowledges that on the face of Plaintiffs' FAC, Dr. Barton's medical examination appear to be part of the laudable endeavor of government's investigation child abuse, a potential crime. There may be sufficient facts to prove that the medical examination was not, in fact, part of a child abuse investigation. But Plaintiffs' allegations that Dr. Barton was a state actor are sufficient to survive a motion to dismiss.

### 3. *Good Faith Immunity*

Dr. Barton argues that even if she is found to be a state actor that violated Plaintiffs' constitutional rights, she is entitled to good faith immunity. Plaintiffs argue that good faith immunity is not available to Dr. Barton because she should have known that medically examining minors, including examining their genitals, without the presence of their parents, a warrant, or, in Plaintiffs' view, exigent circumstances, is unconstitutional. Further, Plaintiffs allege Dr. Barton knew the parents had not given consent because a physician signed the "consent" form for the examinations. But they do not allege that Dr. Barton had actual knowledge of the consent form, that she reviewed the consent form prior to the examination, or that such review would be standard practice by a treating physician.

The qualified immunity defense is not available to private parties; however private parties can assert a "good faith" defense that closely resembles qualified immunity. *Clement v. City of Glendale*, 518 F.3d 1090, 1097 (9th Cir. 2008); *Mangeac v. Armstrong*, No. CV 08-239-S-BLW, 2009 WL 10713025, at *7 (D. Idaho July 31, 2009) ("This circuit . . . has recognized a good faith defense that shields private defendants from § 1983 liability where they reasonably believed they were acting in conformity with state and/or local law."); *see also Wyatt v. Cole*, 504 U.S. 158, 169 (1992) ("[W]e do not foreclose the

possibility that private defendants faced with § 1983 liability . . . could be entitled to an affirmative defense based on good faith . . . ."); *Richardson v. McKnight*, 521 U.S. 399, 413–14 (1997) (same). Courts have granted Rule 12(b)(6) motions to dismiss claims where the good faith defense applies based on the allegations in the complaint. *See, e.g.*, *Crockett v. NEA-Alaska*, 367 F. Supp. 3d 996, 1007 (D. Alaska 2019) (currently on appeal); *Babb v. Cal. Teachers Ass'n*, 378 F. Supp. 3d 857, 876 (C.D. Cal. 2019); *Jarvis v. Cuomo*, 660 F. App'x 72, 75 (2d Cir. 2016).

In *Clement*, a police department authorized a private towing company to tow a car. The towing was unconstitutional because the car's owner did not have notice. However, the Ninth Circuit found that the owner's lack of notice could not have been observed by the towing company at the time when the tow was conducted and, further, that there was no easy way for the towing company to know whether the owner had been notified or not. Thus, the *Clement* court determined the towing company could not have been aware of the other facts and circumstances that were relevant in determining whether notice was constitutionally required. As the responsibility to give notice falls on the police, "the constitutional violation arose from the inactions of the police rather than from any act or omission by the towing company." *Clement*, 518 F.3d at 1097. The towing company was entitled to invoke the good faith defense because it was acting on the instructions of the police department which appeared to be permissible under both local ordinance and state law.

The Ninth Circuit has previously held that "there is no requirement that the examining physician be apprised of" facts that justified a rectal search. *United States v.*

*Velasquez*, 469 F.2d 264, 266 (9th Cir. 1972). In *Velasquez*, custom agents had a physician conduct a rectal probe on the defendant. The defendant contended that the cavity search was unreasonable because the physician was not personally aware of any facts that indicated that the defendant was smuggling narcotics. The Ninth Circuit reasoned that the physician need not be apprised of the facts and reasons for the search:

> We can see no purpose in requiring the customs agents to recite to the examining physician any of the facts which they have concerning [defendant's] possession of narcotics. Since a physician is required to have no knowledge of the law of search and seizure to practice his profession, any such enumeration of the facts by the agents to the doctor would be a meaningless ritual, and would be comparable to requiring the police to recite to a locksmith the basis for their probable cause before he could legally open a lock for them. We cannot see how such a recitation would serve to strengthen the guarantees of the Fourth Amendment.

*Id*. at 266. *See also Bustillos v. El Paso Cty. Hosp. Dist.*, 226 F. Supp. 3d 778, 792–93 (W.D. Tex. 2016), *aff'd*, 891 F.3d 214 (5th Cir. 2018) (holding because medical personnel defendants are "'required to have no knowledge of the law of search and seizure to practice [their] profession,' they are not and cannot be required to articulate reasonable suspicion for the search and seizure of [p]laintiff") (quoting *Velasquez*, 469 F.2d at 266).

Similarly, the Tenth Circuit held in *Marshall v. Columbia Lea Reg'l Hosp.*, that "performing a search at the behest of the ostensibly legal order of a police officer is not unreasonable and hence not a violation of the Fourth Amendment." 345 F.3d 1157, 1180 (10th Cir. 2003). In *Marshall*, police instructed medical personal to take a blood test of the defendant. However, no warrant was available for such a test under state law. The Tenth Circuit reasoned that "[n]urses and other medical personnel have neither the training nor the information that would be necessary to second-guess police determinations regarding

probable cause, exigent circumstances, and the like." *Id.* at 1180. "If it is reasonable for nurses to rely on other nurses regarding consent, we see no reason to doubt it is reasonable for nurses to rely on police officers regarding probable cause and exigent circumstances." *Id.* at 1179 (citing to *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1217 n.15 (10th Cir. 2003) (permitting nurses to rely on the representations of other nurses that parental consent has been obtained for the medical examinations of children)).

Plaintiffs argue that pursuant to Idaho Code §39-4504, Dr. Barton "flouted" state law in conducting the examination without parental consent. Dkt. 52, at 15. Under Idaho law, "[c]onsent for the furnishing of hospital, medical, dental, surgical or other health care, treatment or procedures to . . . a minor may be given or refused in the order of priority set forth hereafter," and lists several categories of people who may provide such consent. I.C. § 39-4504(1). The last category is "any other competent individual representing himself or herself to be responsible for the health care of such person." I.C. § 39-4504(1)(i).

There is no allegation in the FAC that Dr. Barton participated in the decision to take protective custody of the children. *See Sjurset v. Button*, 810 F.3d 609, 613 (9th Cir. 2015) (granting qualified immunity where officers entered the house after others had made the protective-custody determination and who therefore did not participate in the protective-custody decision). Plaintiffs offer no reason why it was unreasonable for Dr. Barton to believe she had authority to medically examine the children, nor do they allege what authority Dr. Barton relied on to conduct the examination. Although it seems reasonable that the government held itself out as being responsible for minor Plaintiffs' care when presenting them for the medical examination, Plaintiffs make no such allegation. They do

not allege which physician signed the consent form to examine the children, nor that Dr. Barton was aware of the signed consent form. Nor do they allege that it was standard practice for doctors such as Dr. Barton to review the consent form prior to conducting the examination, rather than the front desk. Dr. Barton may have relied on other medical practitioners' representation that minor Plaintiffs' guardian had provided consent; it is simply not clear from the face of the FAC.

Even if Dr. Barton was directed by the government to medically examine the minor Plaintiffs *and* there was, in fact, no exigency or legal authority for the government to order such an examination, Dr. Barton would not be liable. Dr. Barton would not have been aware of the facts and circumstances that would be relevant in determining whether such emergency existed. As the responsibility to obtain a warrant or determine if there is an exigency falls on the government,[4] not private medical practitioners, the constitutional violation (if any) arose from the inaction of the government officials rather than from any act or omission by Dr. Barton. *See Clement*, 518 F.3d at 1097. Further, as a physician, Dr. Barton is not required to have knowledge of the law of search and seizure to practice her profession. She has neither the training nor the information that would be necessary to second-guess law authorities' determinations regarding probable cause, exigent circumstances, and the like. Plaintiffs have not plausibly alleged otherwise. Thus, Dr. Barton is entitled to invoke the good faith defense because she was acting on the

---

[4] Whether an exigency actually exists is, of course, question of law and fact ultimately to be ruled on by a court.

instructions of the state which appeared to be permissible under state law.

Plaintiffs' Third Claim against Dr. Barton pursuant to § 1983 is dismissed.

## B. 42 U.S.C. § 1985 Claim

In addition to asserting a § 1983 claim against St. Luke's in their Fourth Claim, Plaintiffs also assert a 42 U.S.C. § 1985 claim against St Luke's. Plaintiffs do not oppose St. Luke's motion to dismiss their § 1985 claim. Dkt. 52, at 4 n.1. Therefore, the Court dismisses Plaintiff's Fourth Claim against St. Luke's under § 1985 without prejudice.

## C. Injunctive Relief Claim

Plaintiffs assert their Fifth Claim against ACSD, St. Luke's, IDHW officials, and Does 24–50. Plaintiffs' Fifth Claim is for equitable relief; they ask for injunctive relief to prevent St. Luke from conducting medical examinations without proper consent, court order, or exigent circumstances, and to forestall "future violations of Plaintiffs' constitutional rights by the IDHW officials who are responsible for enacting and enforcing the policies and practices of the State and training and supervising their employees who are required to protect children and their families." Dkt. 53 at 6.

Plaintiff's FAC focuses primarily on a single event that occurred in 2017. Plaintiffs now request injunctive relief to prevent something similar to that event happening again. They allege that Defendants' conduct, actions, and/or policies "will cause, and continue to cause, great and irreparable injury to Plaintiffs, and other individuals and citizens." FAC ¶ 58. Additionally, "[a]s parents and children residing in the State of Idaho, and particularly due to the intervention of the State and ACSD into their lives . . . , an actual threat of further violations of Plaintiffs' constitutional rights continues to exist." *Id.* ¶ 55. St. Luke's and the

IDHW officials argue that Plaintiffs lack standing to request prospective injunctive relief against future actions by St. Luke's and/or the IDHW officials.

"Standing under Article III of the Constitution is a constitutional limitation on a court's subject matter jurisdiction and cannot be granted by statute." *Norkunas v. Wynn Las Vegas, LLC*, 343 F. App'x 269, 270 (9th Cir. 2009) (citing *Cetacean Cmty. v. Bush,* 386 F.3d 1169, 1174 (9th Cir. 2004); (*Lujan v. Defenders of Wildlife,* 504 U.S. 555, 576–77 (1992))). "Because Article III standing is a true jurisdictional question, rather than a question about the sufficiency of the claim, it is properly addressed in a Rule 12(b)(1) motion." *Id*. (citation omitted).

Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss based on a court's lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). "When considering a motion to dismiss for lack of subject matter jurisdiction, the court presumes the factual allegations of the complaint are true and draws reasonable inferences in favor of the non-moving party." *Whisnaut v. U.S.*, 400 F.3d 1177, 1179 (9th Cir. 2005). The tenet that allegations must be taken as true, however, does not extend to legal conclusions contained in the complaint. *See Iqbal*, 556 U.S. at 678–79. The plaintiff has the burden of establishing that subject matter jurisdiction is proper. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).

"To establish Article III standing, a plaintiff must show (1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58 (2014) (quoting *Lujan v. Defenders of*

*Wildlife*, 504 U.S. 555, 560–61 (1992)).

In *Los Angeles v. Lyons*, 461 U.S. 95 (1983), the plaintiff alleged that his civil rights were violated when police officers used a chokehold on him during arrest. Plaintiff's complaint requested injunctive relief barring the use of chokeholds during future arrests except in extraordinary circumstances. The *Lyons* court held plaintiff lacked standing to request such equitable relief. It explained:

> "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton,* 414 U.S. 488, 495–96 (1974). Past wrongs were evidence bearing on "whether there is a real and immediate threat of repeated injury." *Id.* at 496. But the prospect of future injury rested "on the likelihood that [plaintiffs] will again be arrested for and charged with violations of the criminal law and will again be subjected to bond proceedings, trial, or sentencing before petitioners." *Ibid.* The most that could be said for plaintiffs' standing was "that if [plaintiffs] proceed to violate an unchallenged law and if they are charged, held to answer, and tried in any proceedings before petitioners, they will be subjected to the discriminatory practices that petitioners are alleged to have followed." *Id.* at 497. We could not find a case or controversy in those circumstances: the threat to the plaintiffs was not "sufficiently real and immediate to show an existing controversy simply because they anticipate violating lawful criminal statutes and being tried for their offenses...." *Id.* at 496. It was to be assumed "that [plaintiffs] will conduct their activities within the law and so avoid prosecution and conviction as well as exposure to the challenged course of conduct said to be followed by petitioners." *Id.* at 497.

*Lyons,* 461 U.S. at 102–03; *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (holding that the "'threatened injury must be *certainly impending* to constitute injury in fact,' and . . . '[a]llegations of *possible* future injury' are not sufficient." (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) (emphasis in original)).

The reasoning of *Lyons* is applicable here. The Court must assume that Plaintiffs

will conduct their activities within the law and that the adult Plaintiffs will treat minors in their care lawfully. Similarly, Plaintiffs' assertions that Idaho's child abuse investigation units, officials, and health care providers may follow policies and customs that may "cause" the future removal of minor Plaintiffs from adult Plaintiffs are speculative. Should that occur, Plaintiffs may file a separate action. As Plaintiffs have not alleged that St. Luke's or IDHW policies or customs cause imminent harm to Plaintiffs, the Court dismisses Count Five against St. Luke's and the IDHW officials.

### D. Leave to Amend

Plaintiffs ask in the alternative to be granted leave to file an amended complaint. Dkt. 52, at 17; Dkt. 53, at 8. Leave to amend pleadings shall be freely given when justice so requires. Fed. R. Civ. P. 15(a). Courts apply Rule 15 with extreme liberality. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citations omitted). In determining whether a motion to amend should be granted, the court generally considers five factors: (1) undue delay; (2) bad faith; (3) futility of amendment; (4) prejudice to the opposing party; and (5) whether the plaintiff has previously amended the complaint. *United States v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011) (citation omitted). These factors are not weighted equally: futility of amendment alone can justify the denial of a motion to amend. *Ahlmeyer v. Nev. Sys. of Higher Educ.*, 555 F.3d 1051, 1055 (9th Cir. 2009).

Here, the Court finds amendment would not be futile with respect to Claim Three against Dr. Barton because Plaintiffs might allege reasons she is not entitled to good faith immunity; Claim Four against St. Luke's because Plaintiffs might allege a specific policy

or practice of St. Luke's that creates constitutional violations; and Claim Five because Plaintiffs might allege facts that prove standing. However, amendment would be futile with respect to Claim Three against St. Luke's because only *Monell* claims may be asserted under § 1983 against a private entity.

## V.    ORDER

IT IS HEREBY ORDERED:

1.  Defendant St. Luke's and Dr. Barton's Motion to Dismiss (Dkt. 46) is **GRANTED**.

2.  Plaintiffs' Third Claim against St. Luke's is dismissed with prejudice.

3.  Defendants IDHW officials' Motion to Dismiss (Dkt. 48) is **GRANTED**.

4.  Plaintiffs' request for leave to amend their First Amended Complaint is **GRANTED**. Plaintiffs may file an amended complaint as to all claims except for their Third Claim against St. Luke's in their First Amended Complaint. If Plaintiffs choose to amend, they must file their Second Amended Complaint within 30 days of this Order.

DATED: July 1, 2020

David C. Nye
Chief U.S. District Court Judge