UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DUSTIN INGRAM, FELISHA INGRAM, and L.I., Z.I., AND D.I., minors by and through their Guardian ad Litem, Seth Downham,<br><br>        Plaintiffs,<br>v.<br><br>KATIE MOUSER, ADA COUNTY, JESSICA JOHNSON, ST. LUKE'S REGIONAL MEDICAL CENTER, AMY L. BARTON, M.D., DAVE JEPPESEN, LORI WOLFF, MIREN UNSWORTH, and DOES 1-50,<br><br>        Defendants. | Case No. 1:19-cv-00308-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court are Defendant St. Luke's Regional Medical Center's ("St. Luke's") Motion to Dismiss (Dkt. 67) and Defendant Ada County's Motion to Dismiss (Dkt. 68). Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the motions without oral argument.[1] Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). For the reasons set forth below, the Court GRANTS the motions.

---

[1] While the Court initially scheduled a hearing for these matters, it ultimately deemed a hearing unnecessary and an imprudent use of judicial resources after a full review of the record and briefs. *See* Fed. R. Civ. P. 1.

## II. BACKGROUND

In August 2017, the Ingram family was living in an RV when the Department of Health and Welfare, Family and Children's Services ("FCS") received a report of physical child abuse. One of the Ingram children had a black eye, and there were often "yelling, cussing and crashing" sounds in the Ingram family's home. Dkt. 64, ¶ 16. An FCS social worker visited the family's home on August 11, 2017, and observed a minor injury on one of the children's hands. *Id.* ¶ 17. Five days later, social worker Katie Mouser and detective Jessica Johnson visited the home and reported it was "cluttered and dirty" and that two of the children were "dirty." *Id.* ¶ 18. However, according to the Ingrams' First Amended Complaint, "[n]either Mouser [n]or Johnson found any signs of abuse or that the children were in imminent danger of serious bodily injury." *Id.* During their visit, Mouser and Johnson removed the three Ingram children from the parents' custody without a warrant or parental consent. *Id.* ¶ 20. The state officials then took the children to the Children at Risk Evaluation Services ("CARES") Unit at St. Luke's for examination. *Id.* ¶ 21. There, Dr. Barton conducted complete physical examinations on each of the children, including alleged examinations of their genitals. *Id.*

The Ingrams initially brought this action against social worker Mouser, the Ada County Sheriff's Department ("ACSD"), detective Johnson, St. Luke's, Dr. Barton, the State of Idaho, the Idaho Department of Health and Welfare, as well as unknown Does 1 through 50, alleging violations of their civil rights under 42 U.S.C. § 1983 with underlying First, Fourth, and Fourteenth Amendment violations. Dkt. 1. On December 30, 2019, the Ingrams filed their First Amended Complaint. Dkt. 35. The First Amended Complaint

MEMORANDUM DECISION AND ORDER - 2

dropped some Defendants and added others. It also added a 42 U.S.C. § 1985 and *Monell*-related claims against St. Luke's. *Id. See generally Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658 (1978).

A first round of motions to dismiss followed, which the Court granted. Specifically, the Court granted the IDHW officials' Motion to Dismiss (Dkt. 48) in its entirety. The Court also granted St. Luke's and Dr. Barton's Motion to Dismiss (Dkt. 46) and dismissed the claims against St. Luke's for failing to plead sufficient facts to establish a *Monell* claim. To borrow liberally from part of the Court's previous Order, the Court explained the numerous shortcomings of the Ingrams' pleading:

> [The Ingrams] do not allege that St. Luke's has a specific written or official policy of providing services to children removed from their parents without a court order, warrant, or parental consent. Rather, [the Ingrams] generically allege that St. Luke's has inadequate training. They do not allege specific facts that show a pattern of violations of individuals' Fourth or Fourteenth Amendment rights. Nor do they allege that St. Luke's had actual or constructive notice that a particular training omission was substantially certain to result in a violation of their patients' constitutional rights.
>
> . . . .
>
> Their complaint does not state that the policy at issue involved collaboration with the State and Ada County. Even if they had, they still do not allege specific facts regarding what St. Luke's policy actually entailed, if it was written or informal, who carried out what task, when the policy was implemented, etc. Simply put, there are no specific facts about what St. Luke's purported policy is.

Dkt. 62, at 9–10 & n.3. The Court also dismissed the § 1983 claim against Dr. Barton with prejudice based on the good faith defense available to private individuals and entities in § 1983 lawsuits. *Id.* at 22–23. In addition, the Ingrams did not oppose dismissal of their § 1985 claim, leading the Court to dismiss it. *Id.* at 23. The Court,

MEMORANDUM DECISION AND ORDER - 3

nevertheless, allowed the Ingrams leave to amend the First Amended Complaint.

On July, 31, 2020, the Ingrams filed a Second Amended Complaint, asserting the same causes of action against St. Luke's and ACSD. Dkt. 64. The fourth cause of action—the only claim pertinent to the instant motions—asserts the same *Monell*-related claims against St. Luke's and ACSD with slight changes. The change material to this matter is an allegation that the Ingrams did not need to add more factual details because such were to be fleshed out in discovery. *Id.* ¶ 45b. The Ingrams still allege that St. Luke's has a policy of unlawfully conducting medical examinations of children without proper consent, *id.* ¶¶ 45–49, and that Ada County has a policy of unlawfully removing children from homes and subjecting them to medical examinations, *id.* ¶¶ 41–44. With respect to their § 1985 claim, the Ingrams still left references to it and have made no changes to it.

Here, as before, the Ingrams have not opposed dismissal of that claim. As a matter of fact, in both of their Responses, the Ingrams explicitly express their non-opposition to dismissal of their § 1985 claim. Dkts. 71, at 8 n.2; 74, at 7 n.4. Therefore, the claim is dismissed with prejudice, as it is readily apparent that the Ingrams are no longer pursuing it.[2] No further reference or argument shall be made regarding § 1985 in this case.

---

[2] Even if the claim were not abandoned, the Court would dismiss it under Rule 12(b)(6) because it remains unspecified to which subsection of § 1985 the Ingrams refer. Additionally, assuming they referred to subsection (3), as it is the most plausible given the other allegations, the claim would be dismissed because there are no allegations regarding a conspiracy (in fact, in the same footnotes, the Ingrams specifically disclaim a conspiracy) or class-based animus/discrimination as required to state a claim under 42 U.S.C. § (Continued)

The Second Amended Complaint precipitated this second round of motions to dismiss. On August 14, 2020, St. Luke's moved to dismiss the Ingrams' fourth claim against it. Dkt. 67. Less than a week later, Ada County moved to dismiss the Ingrams' fourth claim against it as well. Dkt. 68. The briefing proceeded in a normal manner. While it did, the Ingrams moved to substitute Ada County for ACSD and St. Luke's for the previously named St. Luke's Children's Hospital, which is not a legal entity. Dkt. 70. St. Luke's and Ada County did not oppose the motion. *See* Dkts. 75, 79. Consequently, the Court allowed the substitutions. Dkt. 80. The Court now turns its attention to the instant motions to dismiss.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a claim if the plaintiff has "fail[ed] to state a claim upon which relief can be granted." A Rule 12(b)(6) dismissal may be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (citation omitted). In deciding whether to grant a motion to dismiss, the court must accept as true all well-pled factual allegations made in the pleading under attack. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A court is not, however, "required to accept as true allegations that are merely conclusory,

---

1985. *See Gillespie v. Civiletti*, 629 F.2d 637, 641 (9th Cir. 1980) ("To state a cause of action under § 1985(3), a complaint must allege (1) a conspiracy, (2) to deprive any person or a class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or a deprivation of any right or privilege of a citizen of the United States." (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102–03 (1971)).

unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Dismissal without leave to amend is inappropriate unless it is beyond doubt that the complaint could not be saved by an amendment. *See Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009).

## IV. ANALYSIS

The Court will address the two motions to dismiss in the order they were filed. The Court then turns to the issue of whether leave to amend is appropriate.

### A. St. Luke's Motion to Dismiss (Dkt. 67)

In its motion, St. Luke's makes four arguments for dismissal of the Ingrams' *Monell* claim against it. Because the Court is convinced of both the first argument—that the Ingrams have still not pleaded sufficient facts to support a *Monell* claim—and the fourth argument—that the good faith defense applies—the Court need not and does not address the other two arguments.[3] The first and fourth argument each provide an independent basis for dismissing the claim and will be addressed in turn.

#### 1.  *Monell*

In general, "[t]o establish § 1983 liability, a plaintiff must show both: (1) deprivation of a right secured by the Constitution and laws of the United States; and (2) that the deprivation was committed by a person acting under color of state law." *Chudacoff v. Univ. Med. Ctr. of S. Nev.*, 649 F.3d 1143, 1149 (9th Cir. 2011) (citing *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003)). To bring a § 1983 claim against a governmental entity or

---

[3] The other two arguments are that the Ingrams have not adequately pleaded constitutional violations and that they have not demonstrated that St. Luke's acted under color of law. Dkt. 67, at 5.

private entity performing a governmental function, a plaintiff must allege: (1) the plaintiff was deprived of a constitutional right; (2) the municipality or entity had a policy or custom; (3) the policy or custom amounted to deliberate indifference to plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *Mabe v. San Bernardino Cty.*, 237 F.3d 1101, 1110–11 (9th Cir. 2001). Such a claim is considered a *Monell* claim.

In a *Monell* claim, a governmental entity may not be held responsible for the acts of its employees under a respondeat superior theory of liability. *See Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997). Rather, a plaintiff must go beyond the respondeat superior theory of liability and demonstrate that the alleged constitutional deprivation was the product of a policy or custom of the local governmental unit, because *Monell* liability rests on the actions of the entity, and not the actions of its employees. *See Brown*, 520 U.S. at 403; *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Monell*, 436 U.S. at 690–91. A plaintiff must therefore show "deliberate action attributable to the municipality [that] directly caused a deprivation of federal rights." *Brown*, 520 U.S. at 415 (emphasis removed). "Where a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into respondeat superior liability." *Id.*

Here, St. Luke's argues that the allegations in the Ingrams' Second Amended Complaint fall short due to the same errors that the Court previously identified in the Ingrams' claim against St. Luke's. *See* Dkt. 67, at 8. The Court agrees. While the Ingrams allege St. Luke's had a policy of unlawfully examining children without proper consent, the general allegations at hand are still insufficient to state a plausible *Monell* claim. Dkt.

MEMORANDUM DECISION AND ORDER - 7

64, ¶¶ 45–49. As the Ninth Circuit has made clear, a plaintiff seeking to establish a *Monell* claim "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *AE ex rel. Hernandez v. Cty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (cleaned up). Although the Ingrams have made general allegations going to a *Monell* claim against St. Luke's, they have once more failed to rectify the numerous shortcomings already identified by the Court regarding their *Monell* claim against St. Luke's. Questions still remain regarding the who, what, why, when, and how with respect to the alleged policy. For instance, was St. Luke's purported policy a formal written one, a custom, or was an unwritten policy set down by an official policymaker? Were there other instances of the alleged violations sufficient to rise to a legally cognizable pattern? The Court does not know, and neither can St. Luke's based on the Ingrams' pleading.

If complaints were able to survive on a recitation of the elements of a *Monell* claim alone, like the ones here, the Rule 12(b)(6) standard would become a nullity. The Court declines to take such a course. The Court's previous conclusion stands: the Ingrams have failed to plead sufficient facts to support their *Monell* claim against St. Luke's.

Rather than curing the defects outlined in the Court's prior dismissal order, the Ingrams double down and respond by asserting not that they have cured such defects, but that they need not do so. Their position is that they do not need to allege specific details regarding the policy because those details are to be unearthed in discovery. The Ingrams point out that many times plaintiffs will have no way of knowing the intricate details of a policy or custom before they can engage in discovery, citing *Estate of Osuna v. Cty. of*

*Stanislaus*, 392 F. Supp. 3d 1162 (E.D. Cal. 2019), and *Thomas v. City of Galveston, Tex.*, 800 F. Supp. 2d 826 (S.D. Tex. 2011). Such cases do not support the Ingrams' position as much as they suggest.

For instance, in *Estate of Osuna*, the court concluded that the allegations were sufficient to state a *Monell* claim against a Sherriff's Department for excessive force. 392 F. Supp. 3d at 1173. The allegations included several prior instances of similar conduct, which was crucial to the court's conclusion. *Id.* These alleged other instances ultimately supported two theories of a *Monell* claim: a pattern of practice or custom of excessive force and a formal policy was in place. As an important contrast from this case, the other instances informed the general policy allegation, which in turn made it sufficient. *Id.* at 1175. Here, the Ingrams have not alleged any other instances of the alleged misconduct that will further support or elucidate their allegations. Rather, the Ingrams merely identify their single encounter with Defendants, which cannot establish a policy or custom on its own. *See Navarro v. Block*, 72 F.3d 712, 714–15 (9th Cir. 1996); *Thompson v. City of L.A.*, 885 F.2d 1439, 1444 (9th Cir. 1989), *overruled on other grounds by Bull v. City & Cty. of S.F.*, 595 F.3d 964 (9th Cir. 2010).

*Thomas* is even less helpful. There, the Texas court in fact dismissed the *Monell* claim on allegations very similar in conclusory nature to the ones in this case because they were "generic, boilerplate recitations of the elements" of a *Monell* claim. 800 F. Supp. 2d at 845. The plaintiff alleged, among other things, that (1) "the city participated in and was aware of systemic violations of individual rights by Galveston police officers, including the habitual use of excessive force, unlawful searches and seizures, groundless and

MEMORANDUM DECISION AND ORDER - 9

unlawful arrests and reports, intimidation, cruel and unusual punishment and denials of due process and equal protection"; (2) "the city ha[d] a policy or custom of failing to properly investigate, reprimand, discipline, and punish officers for misconduct, and that the policy encouraged, condoned, and permitted the officers' violation of [his] rights; (3) "the city failed to train officers with respect to constitutionally appropriate use of force, employing safe and constitutionally permissible means of performing necessary police functions when dealing with citizens," and the law; and (4) "improper hiring resulted in a pattern of unconstitutional application of the use of force and directly resulted in the deprivation of [his] rights and constituted a deliberate, malicious, and reckless indifference to the rights and safety of [him]." *Id.* (cleaned up). Similarly here, the Ingrams identify an alleged unlawful policy, but they do not allege further details beyond their conclusory statements to that end. Thus, although both cases in dicta have various favorable statements to the Ingrams, the holdings of these cases do not ultimately support the Ingrams' *Monell* claim.

To counter the shortcoming of a single instance, the Ingrams argue that they need not allege more instances of the alleged unlawful activity because their Second Amended Complaint alleges a policy exists. But again, if they cannot identify other instances sufficient to establish a custom or longstanding implied policy, the Ingrams must allege more details than simply concluding St. Luke's has a policy of unlawfully examining children without proper consent because this is what purportedly happened to them.

The reality is that district courts are somewhat split on the issue of how detailed allegations in a complaint must be to plausibly state a *Monell* claim. Some allow very generic allegations, and others require more details than a mere possibility that a policy

exists. *See Estate of Osuna*, 392 F. Supp. 3d at 1175 (collecting cases); *Thomas*, 800 F. Supp. 2d at 841–42 (collecting cases). Frankly, good policy arguments support both positions. In this case, the Court has already stated its position that the Ingrams needed to plead more details known to the Ingrams—a position that is well-supported by controlling and persuasive caselaw.[4] When the Ingrams' conclusory allegations are stricken, there is simply not enough detail to maintain their *Monell* claim. Plaintiffs cannot proceed under a hunch they hope to substantiate during discovery. Federal Rules of Civil Procedure 8 and 12(b)(6), and controlling caselaw, require more.

Ultimately, the Ingrams were either unable to provide more details or chose not to do so. It appears that the Ingrams *think* there is a policy based on what happened to them. When the Ingrams' conclusory statements regarding a policy are set aside, however, all that is left is there single encounter with Defendants. From this, they extrapolate the idea that St. Luke's has a policy to do what they allege happened in their case. That might be so. But absent more detailed allegations to support such a conclusion, the Court cannot allow a *Monell* claim to move forward. In short, the Second Amended Complaint remains deficient with respect to the Ingrams' *Monell* claim against St. Luke's.

### 2. *Good Faith Defense*

St. Luke's also contends that the good faith defense provides another ground for the Court to dismiss the claim against it. The Court agrees. While the qualified immunity defense is not available to private parties, they can assert a "good faith" defense that closely

---

[4] Such caselaw has been cited in this Order and the Court's previous Order and will not be repeated here.

resembles qualified immunity. *Clement v. City of Glendale*, 518 F.3d 1090, 1097 (9th Cir. 2008); *Mangeac v. Armstrong*, No. CV 08-239-S-BLW, 2009 WL 10713025, at *7 (D. Idaho July 31, 2009) ("This circuit . . . has recognized a good faith defense that shields private defendants from § 1983 liability where they reasonably believed they were acting in conformity with [the] law."); *see also Wyatt v. Cole*, 504 U.S. 158, 169 (1992) ("[W]e do not foreclose the possibility that private defendants faced with § 1983 liability . . . could be entitled to an affirmative defense based on good faith . . . ."); *Richardson v. McKnight*, 521 U.S. 399, 413–14 (1997) (same). Courts may grant Rule 12(b)(6) motions to dismiss where the good faith defense applies based on the allegations in the complaint. *See, e.g.*, *Crockett v. NEA-Alaska*, 367 F. Supp. 3d 996, 1007 (D. Alaska 2019); *Babb v. Cal. Teachers Ass'n*, 378 F. Supp. 3d 857, 876 (C.D. Cal. 2019); *Jarvis v. Cuomo*, 660 F. App'x 72, 75 (2d Cir. 2016). *See generally ASARCO, LLC v. Union Pacific R.R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014) (explaining that "[d]ismissal under Rule 12(b)(6) on the basis of an affirmative defense is proper" where the allegations in the complaint establish the defense).

*Clement* shows the good faith defense in action. There, a police department authorized a private towing company to tow a car. *Clement*, 518 F.3d at 1097. The towing was unconstitutional because the car's owner did not have notice. *Id.* However, the Ninth Circuit concluded that the good faith defense applied to preclude liability on the towing company's part for several reasons: "The tow was authorized by the police department, conducted under close police supervision, . . . there would be no easy way for a private towing company to know whether the owner had been notified[,]" and the towing company

could not be aware of the facts and circumstances of notice. *Id.* In coming to this conclusion, the court also stated, "The responsibility to give notice falls on the police, thus the constitutional violation arose from the inactions of the police rather than from any act or omission by the towing company." *Id.*; *see also Tarantino v. Syputa*, 270 F. App'x 675, 677 (9th Cir. 2008) (holding that the private towing companies were entitled to the good faith defense because they "acted at the direction of the police and had no reason to suspect that the seizure of Tarantino's vehicles was constitutionally improper").

A few medical-examination cases also address the issue. In *United States v. Velasquez*, the Ninth Circuit held that "there is no requirement that the examining physician be apprised of" facts that justified a rectal search. 469 F.2d 264, 266 (9th Cir. 1972). There, the defendant contended that the cavity search was unreasonable because the physician was not personally aware of any facts that indicated that the defendant was smuggling narcotics. The Ninth Circuit reasoned that the physician need not be apprised of the facts and reasons for the search:

> We can see no purpose in requiring the customs agents to recite to the examining physician any of the facts which they have concerning [defendant's] possession of narcotics. Since a physician is required to have no knowledge of the law of search and seizure to practice his profession, any such enumeration of the facts by the agents to the doctor would be a meaningless ritual, and would be comparable to requiring the police to recite to a locksmith the basis for their probable cause before he could legally open a lock for them. We cannot see how such a recitation would serve to strengthen the guarantees of the Fourth Amendment.

*Id.*; *see also Bustillos v. El Paso Cty. Hosp. Dist.*, 226 F. Supp. 3d 778, 792–93 (W.D. Tex. 2016), *aff'd*, 891 F.3d 214 (5th Cir. 2018) (holding that because medical personnel defendants are "required to have no knowledge of the law of search and seizure to practice

[their] profession, they are not and cannot be required to articulate reasonable suspicion for the search and seizure of plaintiff" (cleaned up)).

Similarly, in *Marshall v. Columbia Lea Regional Hospital*, the police instructed medical personnel to take a blood test of the defendant without a warrant. 345 F.3d 1157, 1180 (10th Cir. 2003). The Tenth Circuit held that "performing a search at the behest of the ostensibly legal order of a police officer is not unreasonable and hence not a violation of the Fourth Amendment." *Id.* The court reasoned that "[n]urses and other medical personnel have neither the training nor the information that would be necessary to second-guess police determinations regarding probable cause, exigent circumstances, and the like." *Id.* "If it is reasonable for nurses to rely on other nurses regarding consent, we see no reason to doubt it is reasonable for nurses to rely on police officers regarding probable cause and exigent circumstances." *Id.* at 1179.

These cases lead the Court to conclude that the good faith defense applies in this case. The Ingrams' allegations show that St. Luke's conducted an examination of the Ingram children only after ACSD removed them from the home for suspected abuse. St. Luke's relied on ACSD's actions, did not participate in the removal of the children, and was not aware of whether there had been a constitutional violation in removing the children—just as the towing companies had no knowledge of whether or not the car owners had notice. The allegations show that the examinations were performed at the behest of State officials without St. Luke's having complete information about the reasons for removal, the examinations, or the propriety of consent. Indeed, the allegations make clear that St. Luke's could not have been aware of the facts and circumstances that would be

relevant in determining whether the State had the authority to provide consent or whether exigent circumstances existed. Put differently, the Ingrams do not allege that St. Luke's knew the examinations violated the law, knew all the circumstances surrounding the basis for the examinations, and/or acted in bad faith. Nor do they allege that St. Luke's had a legal duty to be well-versed in constitutional law, to demand a report on the circumstances of the requested examinations, and to defy the State officials' ostensibly legal request to examine the children's health and safety.

Because the responsibility to obtain a warrant or determine if there is an exigency falls on the government, not a private hospital, the constitutional violation (if any) falls on the shoulders of the State officials rather than from any act or omission by St. Luke's. Further, the Court agrees with the reasoning of the caselaw discussed. That is, as a medical provider, St. Luke's is not required to have knowledge of the law of search and seizure and the Fourteenth Amendment to provide its services. In light of the allegations in this case, the Court will not impose a duty on St. Luke's to second-guess law enforcement authorities' determinations regarding probable cause, exigent circumstances, and the like. *See Clement*, 518 F.3d at 1097; *Tarantino*, 270 F. App'x at 677; *Velasquez*, 469 F.2d at 266; *Marshall*, 345 F.3d at 1179–80; *cf. Sjurset v. Button*, 810 F.3d 609, 613 (9th Cir. 2015) (granting qualified immunity where officers entered the house after other officers had made the protective-custody determination and who therefore did not participate in the protective custody decision). In short, the allegations in the Second Amended Complaint establish that the way St. Luke's handled this situation was both subjectively and objectively reasonable, and the good faith defense is thereby established.

MEMORANDUM DECISION AND ORDER - 15

Nevertheless, the Ingrams attempt to distinguish this case from *Clement* and other similar cases. They argue that, unlike the private actors in those cases, St. Luke's knew about both federal and state consent laws and a St. Luke's physician signed the consent form anyway in clear violation thereof. This argument is not compelling. For one thing, the Ingrams' allegations are insufficient to support this argument. As previously noted, they do not allege these points. *See Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (arguments in briefs are not allegations). More determinative, however, is that *Clement* and the other cases like it are not distinguishable in the way the Ingrams suggest. Even if the Ingrams' argument—that the St. Luke's physician signed the consent form and knew the law—were in fact alleged in the Second Amended Complaint rather than merely asserted in the briefing on this motion, that is like saying that if the tow company towed the truck and knew the law regarding notice in *Clement*, the good faith defense would not have applied. Such an argument does not address the full reasoning of the good faith defense in this context. In both instances, here and there, the private actors proceeded at the behest of State authority and had no way of knowing the facts regarding whether the State had acted in a legal manner. And again, as a healthcare provider, St. Luke's was under no duty to intimately know constitutional law and to disobey the State officials' examination directive. The Ingrams do not point to a single case that has held a hospital liable under similar circumstances.

Accordingly, based on both the plain allegations in the Second Amended Complaint and those that are absent, the good faith defense applies. The *Monell* claim against St. Luke's is therefore dismissed.

MEMORANDUM DECISION AND ORDER - 16

**B. Ada County's Motion to Dismiss (Dkt. 68)**

In its motion, Ada County argues that the Ingrams did not properly effectuate service of process and that they still fail to state a *Monell* claim.[5] The Court will address these two issues in turn.

*1. Service*

The Court need not delve into the propriety of service in this case because the defense has been waived. Many defenses, including improper service, "may be waived as a result of the course of conduct pursued by a party during litigation." *Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1318 (9th Cir. 1998); *see also* Fed. R. Civ. P. 12(h)(1). The Ninth Circuit construes waiver of the so-called disfavored defenses—the defenses found in Rule 12(b)(2) through (5)—in a strict manner against defendants. Indeed, the Ninth Circuit has observed that "a fundamental tenet of the Federal Rules of Civil Procedure is that certain defenses under Fed. R. Civ. P. 12 must be raised at the first available opportunity or, if they are not, they are forever waived." *Boston Telecommunications Grp., Inc. v. Deloitte Touche Tohmatsu*, 249 F. App'x 534, 537 (9th Cir. 2007) (cleaned up) (quoting *Am. Ass'n of Naturopathic Physicians v. Hayhurst*, 227 F.3d 1104, 1106 (9th Cir. 2000)). If a party fails to raise a challenge to service of process "in a preliminary Rule 12 motion or its *first responsive pleading*, such challenge is forever waived." *Ribeiro v. Baby Trend, Inc.*, 2016 WL 3093439, at *4 (D. Neb. June 1, 2016) (emphasis added) (citing

---

[5] Ada County's other arguments related to dismissing ACSD are moot since the Court has already substituted Ada County for ACSD. *See* Dkt. 80. Additionally, Ada County cites Rule 12(b)(2) but makes no argument related to personal jurisdiction. Because each of Ada County's arguments go to whether service was proper, the Court focuses its attention on that issue. In any event, the Rule 12(b)(2) defense is waived for the same reasons the other defenses have been waived.

*Hayhurst*, 227 F.3d at 1106-07). "[T]he filing of an amended complaint does not revive a Rule 12(b) defense that was previously waived." *Id.* This rule is one of fairness and judicial economy. District courts have wide discretion in deciding motions to dismiss regarding issues of service. *See S.J. v. Issaquah Sch. Dist. No. 411*, 470 F.3d 1288, 1293 (9th Cir. 2006).

Here, the facts demonstrate that Ada County cannot now assert defenses related to service. Early on in this case, ACSD waived service. Dkt. 20. Thereafter, ACSD did not raise the issue of service in its initial Answer or even its subsequent Answer. *See* Dkts. 26, 47. And when the Court recently substituted Ada County for ACSD upon the Ingrams motion, Ada County neither opposed the substitution nor raised any issues regarding service. Dkt. 79. It was not until the present motion, which came after the waiver and two Answers, but before the substitution, that Ada County assailed the service of process in this case. Thus, it is not entirely clear if Ada County maintains its argument that service was improper. To the Court, this argument appears to be abandoned. However, to the extent it is still asserted, the sequence of events in this case indicate that Ada County and its attorney had notice of this case, had every opportunity to raise the defense of insufficient service earlier, and failed to do so. Under these circumstances, the Court determines that Ada County's conduct and failure to raise the issue of service sooner waived the defense.

### 2. *Monell*

Ada County also argues that the allegations in the Ingrams' Second Amended Complaint fall short on their *Monell* claim against it due to some of the same errors that the Court previously identified in the Ingrams' claim against St. Luke's. *See* Dkt. 68, at 8.

The Court agrees. Although the allegations are somewhat different because they are against Ada County instead of St. Luke's, and involve a policy of unlawfully removing children from homes as well, they have the same shortcomings explained in this Order and the Court's previous one. The conclusory allegations are insufficient. For the sake of brevity, the Court will not repeat those same points here. Suffice it to say that the Ingrams cannot maintain their *Monell* claim against Ada County for the same reasons. Accordingly, the claim is dismissed.

### C. Leave to Amend

The Court will exercise its discretion to dismiss the *Monell* claim against St. Luke's and Ada County without allowing leave to amend. It is well-settled that the grant of leave to amend pleadings is within the discretion of the trial court. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971) (citing *Forman v. Davis*, 371 U.S. 178, 182 (1962)). Liberal leave to amend does not mean limitless leave to amend, especially when the party's position is that amendment of a pleading is unnecessary. As such is the case here, allowing leave to amend would be a fruitless activity. Additionally, the Ingrams have already had three attempts to state a proper claim, one of which was after specific explanation of the deficiencies from the Court. *Destfino v. Reiswig*, 630 F.3d 952, 958–59 (9th Cir. 2011) ("Plaintiffs had three bites at the apple, and the court acted well within its discretion in disallowing a fourth.").

The Ingrams have not stated a reason for leave to amend or explained how amendment could cure the identified deficiencies. Indeed, the Court does not see how an amendment could both fix the shortcomings and stay true to the narrative already alleged.

Additionally, the Ingrams do not respond to the arguments against leave to amend raised by St. Luke's and Ada County. Consequently, leave to amend will not be permitted. *See Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008) (stating that leave to amend may be denied "due to undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of amendment." (cleaned up)); *Ryan v. Microsoft Corp.*, 147 F. Supp. 3d 868, 896–97 (N.D. Cal. 2015).

## V. CONCLUSION

For the foregoing reasons, the Court dismisses with prejudice the Ingrams' fourth cause of action against St. Luke's and Ada County with prejudice.

## VI. ORDER

The Court HEREBY ORDERS:

1. The Motion to Dismiss (Dkt. 67) filed by St. Luke's is **GRANTED**.

2. Ada County's Motion to Dismiss (Dkt. 68) is **GRANTED**.

3. Plaintiffs' 42 U.S.C. § 1985 claim is dismissed with prejudice.

4. Plaintiffs' fourth claim against St. Luke's and Ada County is dismissed with prejudice.

DATED: February 1, 2021

David C. Nye
Chief U.S. District Court Judge